IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| ROBERT S. FORREST, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 06-4248-CV-C-NKL |
| ) | |
| HARTFORD LIFE AND ACCIDENT ) | |
| INSURANCE COMPANY , ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

Plaintiff Robert S. Forrest ("Forrest") asserts that Hartford Life and Accident Insurance Company ("Hartford") wrongfully terminated his long-term disability plan ("Plan") benefits in violation of the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq. ("ERISA"). Hartford denies this assertion and argues that Forrest is no longer eligible for benefits under the terms of the Plan. Pending before the Court are cross-motions for summary judgment.

**I.     Factual Background**

On June 1, 1991, Forrest's employer, Toys "R" Us, adopted the Hartford's Plan for the benefit of its employees. (Administrative Record ("AR"), 0453). Forrest was a manager for Toys "R" Us and a participant in the Plan. As the administrator, the Plan granted Hartford full discretion and authority to determine eligibility for benefits. (AR,

1024).

The Plan includes two definitions of disability. During the first thirty-six months of an alleged disability, the employee will be deemed disabled if he cannot perform the job he previously held (the "own occupation" standard). (AR, 1025). After thirty-six months, however, the employee will be deemed disabled only if he cannot perform any job for which he is reasonably qualified, or could become qualified by training, education or experience (the "any occupation" standard).

On September 1, 1994, Forrest attempted to intervene between two customers who were assaulting each other. (AR, 0473). The feuding customers then assaulted Forrest, shoving him three times and ramming him into a wall. Id. As a result of his injuries, Forrest experienced pain in his back and legs as well as headaches. *Id*. Following extensive surgical, rehabilitative and medical treatments to reduce his pain, Forrest's orthopaedic surgeon, Dr. C. Erik Nye, diagnosed him with traumatic cervical strains with intermittent right radicular pain and occipital headaches. (AR, 0228). Mental and nervous conditions eventually accompanied Forrest's physical injuries. (AR, 0909). As a result of his injuries, Forrest met the Plan's definition of total disability. He first began receiving benefits on July 17, 1995. (AR, 0009).

Over the next three years, Forrest's pain prevented him from working. (AR, 0232). During this three-year period, he received several different prescriptions for painkillers, and his doctor continued to believe he was disabled. *Id*. In March 1997, Forrest's doctor indicated that "after considerable treatment," Forrest was "totally and permanently

2

disabled." *Id*.

During the three years after Forrest was placed on disability, Hartford continued to review Forrest's status. In June 1998, Hartford's benefit management services unit reviewed Forrest's file in preparation for the change from the "own occupation" standard to "any occupation" standard. In connection with this review, Hartford reviewed Forrest's medical history and performed a "functional capacity evaluation" ("FCE") to determine Forrest's level of ability to work. On August 31, 1999, Hartford informed Forrest that his benefits were being terminated because he could perform sedentary occupations as determined by the FCE. (AR, 0940). On November 17, 1999, Forrest appealed Hartford's decision to terminate benefits on the basis of Dr. Nye's clinical treatment notes, a notice dated July 20, 1999, from the Social Security Administration attesting to Forrest's continuing disability and a letter from Dr. Edward Neufeld detailing Forrest's post-traumatic stress disorder ("PTSD") arising from his 1994 assault and accompanying injuries. Dr. Neufeld's letter stated that Forrest "was not capable of employment at the present time." (AR, 0924, 0927). On January 11, 2000, Hartford reinstated Forrest's benefits under the Plan noting that Forrest's mental condition was "more of the primary disabling condition." (AR, 0594, 0916).

Between January, 2000 and July, 2004, Hartford continued to conduct annual reviews to determine Forrest's eligibility for benefits under the Plan. On July 13, 2004, Hartford referred Forrest's case to its investigation unit. (AR, 0588). In connection with this investigation, Hartford hired a private investigator who videotaped Forrest's house

3

for three days in August and three days in September (AR, 0030-0047). The private investigator filmed the Forrest retrieving mail, carrying out the garbage, driving his car, carrying items from a hardware store, picking up the newspaper, trimming hedges and washing his truck without noticeable difficulty or discomfort. *Id.*

Hartford also hired two physicians, Dr. Stuart Shipko, psychiatrist, and Dr. Robert Pick, orthopaedic surgeon, to review Forrest's medical records and discuss Forrest's case with his treating physicians. (AR, 0579). This review included conversations with Dr. Nye, as well as Forrest's pain management physician, Dr. Steven Simon, and his chiropractor, Dr. Robert Graham. On February 4, 2005, Dr. Shipko determined that "the available medical information does not support any restrictions and/or limitations for psychiatric impairment." *Id.* Dr. Pick determined that the Forrest is "capable of at least a light work level on an eight hour day." *Id.*

Hartford further referred Forrest's file to its rehabilitation case manager for employability analysis. (AR, 0008). That review concluded that Forrest could perform his own previous occupation of director, as well as five additional occupations. (AR, 0579). On February 10, 2005, Hartford decided to terminate Forrest's benefits under the Plan because the Forrest was no longer totally disabled from any occupation. (AR, 0576). On February 18, 2005, Hartford sent notice to Forrest of its decision to terminate. (AR, 0007). Hartford denied Forrest's subsequent appeal on June 22, 2005. (AR, 0571).

**II.     Summary Judgment Standard**

A moving party is entitled to summary judgment "if the pleadings, depositions,

4

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A defendant who moves for summary judgment bears the burden of showing that there is no genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). When considering a motion for summary judgment, a court must scrutinize the evidence in the light most favorable to the nonmoving party and the nonmoving party "must be given the benefit of all reasonable inferences." *Mirax Chem. Prods. Corp. v. First Interstate Commercial Corp.*, 950 F.2d 566, 569 (8th Cir. 1991) (citation omitted). The main purpose of a motion for summary judgment is to identify factually unsupported claims. If a plaintiff has the burden of proof at trial on a claim and the defendant has filed a motion for summary judgment, the plaintiff must identify admissible evidence sufficient to make a submissible case at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). If the plaintiff cannot identify such facts, the defendant is entitled to judgment as a matter of law. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 884 (1990) (quoting *Celotex*, 477 U.S. at 322).

**III.   Discussion**

    **A.   Review of Plan Administrator's Decision**

ERISA provides a plan beneficiary with the right to judicial review of a benefits determination. *Woo v. Deluxe Corp.*, 144 F.3d 1157, 1160 (8th Cir. 1998). Because the Plan gives the administrator discretionary authority to determine eligibility for

benefits, we review the administrator's decision for abuse of discretion. *Ortleib v. United HealthCare Choice Plans*, 387 F.3d 778, 781 (8th Cir. 2004). "This deferential standard reflects our general hesitancy to interfere with the administration of a benefits plan." *Layes v. Mead Corp.*, 132 F.3d 1246, 1250 (8th Cir. 1998) (citations omitted). Under the abuse of discretion standard, "the proper inquiry is whether the plan administrator's decision was reasonable." *Fletcher-Merrit v. Noram Energy Corp.*, 250 F.3d 1174, 1179 (8th Cir. 2001) (internal quotations omitted). A plan administrator's fact-based disability decision is reasonable if it is supported by "substantial evidence." *Id.* The district court will reverse the plan administrator's decision only if it is arbitrary and capricious. *Groves v. Metro Life Ins. Co.*, 438 F.3d 872, 874 (8th Cir. 2006).

### B. Hartford's Decision to Terminate Benefits

Hartford did not abuse its discretion in terminating Forrest's benefits because substantial evidence supported its determination that Forrest was not totally disabled. Moreover, the opinions of Forrest's treating physicians are consistent with Hartford's interpretation of his ability to work. First, evidence reveals that Hartford determined that Forrest's physical injuries had abated to the extent that he was able to maintain sedentary or light work occupations as early as 1999. (AR, 0597). Hartford granted Forrest's appeal of this decision based upon Forrest's mental and nervous conditions which accompanied his pain as diagnosed by Dr. Neufeld. (AR, 0594). Between Forrest's 1999 diagnosis and Dr. Shipko's conversation with Dr. Neufeld on January 18, 2005, Forrest's

condition had changed and Dr. Neufeld reported that absent physical problems, Forrest's mental status would allow him to work. (AR, 0739). At the point that Dr. Neufeld stipulated that Forrest's mental status, rather than his physical injuries, permitted him to work, the treating and reviewing physicians could reasonably disagree as to Forrest's physical ability to do sedentary or light work. Dr. Neufeld did not comment on the surveillance evidence taken by Hartford. (AR, 0009). Second, on January 25, 2005, Dr. Graham opined that Forrest could work at a sedentary position, although it would increase his pain. (AR, 0729). Dr. Graham refused to comment on Forrest's ability to "work eight hours a day" citing "variability in [Forrest's] symptoms. *Id*. Third, Dr. Simon refused to comment on Forrest's work ability because he had seen Forrest only twice. (AR, 0730). Dr. Simon suggested that the results of the electromyogram ("EMG"), or the electric testing of muscles and nerves, could refute the surveillance evidence presented to him by Hartford. *Id*. Dr. Pick concluded that the EMG results collected by Dr. Simon, did not "in and, of themselves . . . substantiate a complete impairment or disability." (AR, 0731). Forrest claims that Hartford should not have credited Dr. Pick's analysis over Dr. Simon's conclusions because Dr. Pick did not physically examine Forrest. However, a plan administrator has discretion to deny benefits based upon its acceptance of the opinions of reviewing physicians over the conflicting opinions of the claimant's treating physicians unless the record does not support the denial. *Johnson v. Metro. Life Ins. Co.*, 437 F.3d 809, 814 (8th Cir. 2006).

Substantial evidence supported the Hartford's decision to discontinue benefits. The information available to Hartford changed significantly between the time it granted benefits to Forrest and when it discontinued those benefits. Hartford's previous grants of benefits were based on Dr. Nye's diagnosis that Forrest was permanently and totally disabled, Dr. Neufeld's letter attesting to Forrest's mental and nervous disorders accompanying his pain, and other information provided by Forrest, himself. Between the time it granted benefits and when it terminated them, Hartford had requested that two consulting physicians review Forrest's medical records. These physicians determined that Forrest was not disabled from working at any occupation as defined in the Plan. All parties agree that the Forrest continues to suffer physical and mental pain arising from his assault in 1994. However, the Court cannot conclude that Hartford's decision to terminate benefits was arbitrary and capricious.

Accordingly, it is hereby ORDERED that Forrests' Motion for Summary Judgment (Doc. # 14) is DENIED.

It is further ORDERED that Hartford's Cross-Motion for Summary Judgment (Doc. # 12) is GRANTED.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: August 30, 2007
Kansas City, Missouri